[Civ. No. 1654.    Third Appellate District.—May 16, 1917.]

## VICTORIA ALDEN, Appellant, v. C. E. MAYFIELD, Respondent.

LANDLORD AND TENANT—REMOVAL OF GLASS AND MARBLE FRONT OF BUILDING—RIGHT OF TENANT.—In this action by a landlord against a tenant for damages in removing a plate glass and marble stone front from the demised premises, it is held that the evidence justifies the findings that the glass and marble were attached to the building at the defendant's own expense and were his property; that they were not so affixed as to constitute them integral parts of the premises; that they were removed without damage to the freehold or building; and that the building upon such removal was put in as good condition as it was at the time that the glass and marble were installed.

ID.—PLEADING — AMENDMENT OF ANSWER — DISCRETION.—In such an action where it was evident that from the very inception of the action, and particularly from the time of the filing of the answer, that it was the theory of the defendant that having put in the glass and marble front at his own expense, they constituted his property, and that he had the right to remove them on the termination of his lease, but such theory was not presented by the answer as originally filed, and that by reason thereof the defendant lost on appeal, it is an exercise of sound judicial discretion to grant the defendant on the second trial leave to amend his answer conformably to such theory.

APPEAL from a judgment of the Superior Court of Solano County, and from an order denying a new trial.    A. J. Buckles and W. T. O'Donnell, Judges.

The facts are stated in the opinion of the court.

W. U. Goodman, for Appellant.

T. T. C. Gregory, and C. J. Goodell, for Respondent.

HART, J.—This appeal grows out of a second trial of this action. In the former trial, as in the second, the defendant prevailed, and an appeal was taken by the plaintiff to the supreme court from the judgment and the order denying him a new trial. The judgment and the order were reversed (*Alden* v. *Mayfield,* 163 Cal. 793, [Ann. Cas. 1914A, 258, 41 L. R. A. (N. S.) 1022, 127 Pac. 44]), and the nature of the action and the issues as presented and tried at the former trial are stated in the opinion in that case as follows:

"Plaintiff sued to recover damages for injury to her freehold, and for an injunction to restrain threatened future damages. The specific charge of damages was that the defendant 'between midnight of the twenty-eighth day of May and daylight of the twenty-eighth day of May, wrongfully and unlawfully cut down, tore out, and removed the heavy plate glass and stone front of a brick building belonging to plaintiff and replaced the same with a cheap temporary structure with great damage to said property and the said plaintiff in the sum of $1,000.' Defendant admitted the taking down and removal of the plate glass and the marble stone front, but alleged that while tenant of the building he placed the plate glass and marble in the building; that the windows and marble were owned by him 'and were placed there by him for the purpose of trade, ornament, and convenience only, and were trade fixtures and not an integral part of the said store or premises, and could be and were removed without any injury to the premises.' The court found in accordance with this averment of the answer. It further found that defendant threatened to remove fixtures which were part of the freehold, and as a conclusion of law declared that plaintiff was entitled to an injunction restraining defendant from injuring the freehold; but by its judgment withheld the injunction and gave judgment for defendant for costs."

In the opinion, it is said: "It is to be noted that the answer does not base the right of removal upon any agreement between the landlord and tenant, and the court does not find

that the removal was by virtue of any such agreement. Wherefore, all of respondent's argument based upon section 1013 of the Civil Code is meaningless. The pleadings and the findings are to the effect that the property removed was the tenant's property; was affixed to the freehold for the purpose of trade, ornament, and convenience and had not become an integral part of the store or premises. This is a finding under section 1019 of the Civil Code, which permits such removals under the indicated circumstances. The questions presented are, first, whether the plate glass and marbles so removed belonged to the defendant and whether, if they so belonged to the defendant, they were attached to the freehold in such manner as to justify his removal of them. That they were attached by screws is uncontradicted. That the plate-glass windows and the marble formed the front of the store occupied by defendant is equally without controversy. Their removal necessarily, and against any evidence to the contrary, was the removal not of a fixture but of a portion of the building itself—the very front of the store. By such removal the building itself ceased to be an inclosure and was open to intruders and the elements.''

Upon the return of the cause to the court below for retrial, the defendant applied for and, over objection by the plaintiff, was granted leave to amend his answer by pleading an express oral agreement between him and the plaintiff, whereby it was stipulated and agreed that the defendant should put in the plate glass and the marble base in the front of the building at his own expense and that, upon quitting the premises, he might remove the same upon the condition that he would not injure the building, and would place the portion from which the glass and the marble were removed in equally as good condition as when the change indicated was made.

The court, as a result of the last trial, found that the agreement for the removal of the plate glass and the marble base, as pleaded in the amended answer, had been entered into between the parties. Conclusions of law were made and filed in accordance with the findings, and judgment thereupon entered against the plaintiff and in favor of the defendant for costs.

These appeals by the plaintiff are from the judgment and the order denying her a new trial.

It is obvious that the situation presented by this appeal is, in material and important particulars, entirely different from that presented herein on the former appeal. As is to be noted from the excerpt extracted and reproduced above from the opinion of the supreme court disposing of the former appeal, the question whether there was an agreement between the parties, whereby the defendant was to be allowed to remove from the front of the building the plate glass and the marble installed therein by him upon quitting the premises, was not made an issue by the pleadings, nor was there a finding thereon by the trial court. The amendment of the answer after the decision by the supreme court formally introducing that issue into the case, and the finding thereon that such an agreement had been made present, in a legal aspect, a much different case from that submitted to the supreme court on the first appeal.

In addition to the finding that an agreement was made authorizing the defendant, upon ceasing to occupy the building, to remove the plate glass and marble slabs from the front of the building, the court, as a result of the second trial, made the following findings, which appear to derive from the evidence sufficient support:

"It was stipulated by plaintiff and defendant, and is hereby found as a fact, that all the shelving, fixtures, and such appliances attached to and connected with the store and all staging, electric-light wiring, and gas-fittings, were, and are, the property of plaintiff, and that they could not be removed by defendant; the court finds that defendant has not threatened nor intended to, and will not, unless restrained by this court, or at all, cut out, tear down, or remove any of the shelving, fixtures, or appurtenances last hereinabove described, but has removed only such fixtures, as aforesaid, as by stipulation and agreement, he could remove"; that "it was further stipulated by plaintiff and defendant and now is found as a fact that the following articles were, and are, the property of the defendant, and might be removed by him: three glass hatcases, four glass showcases on the side, two center glass showcases, six glass sectional suit cabinets or cases, one counter, one running ladder, one stove, one cash register, one safe, two mirrors, and all other articles not attached to the building."

It will later be shown that the issue as to the injunctive relief prayed for by the plaintiff has become entirely immaterial, so far as these appeals are concerned, and, therefore, the determination of these appeals, save as to certain rulings on evidence and the order allowing the amendment to the answer, is narrowed down to and made to rest solely upon the solution of three propositions, viz.: 1. Whether an agreement to remove the glass and marble was made; 2. If so, were they removed in such manner as unnecessarily to injure or damage the building; 3. Was the building, or the front portion thereof from which the glass and the marble were removed, placed by the defendant in as good condition as it was prior to the installation of the plate glass and marble show-window?

The decision of these questions obviously depends upon the further proposition whether the evidence supports the findings that the agreement was made, that, in removing the glass and marble, the building was not injured or damaged, and that the front portion thereof, after the removal, was placed and left in as good condition as it was in before the new show-window was installed by the defendant.

It is proper to observe that the evidence disclosing the nature of the improvements which, under the agreement, were to be removed by the defendant, and their effect upon the building when installed, and the effect of their removal upon the building—that is, whether they were so attached thereto as that their removal would of itself impair or weaken the building—is, we judge from the opinion of the supreme court, entirely different from that which thus appears to have been shown by the record supporting the former appeal. For instance, the evidence, as it was incorporated into the record upon which the former appeal was submitted, apparently justified the conclusion that "the plate-glass windows and the marble formed the front of the store occupied by the defendant," that "their removal necessarily, and against any evidence to the contrary, was the removal not of a fixture but of a portion of the building itself—the very front of the store," and that "by such removal the building itself ceased to be an inclosure and was open to intruders and the elements." (*Alden* v. *Mayfield,* 163 Cal. 793, 795, [Ann. Cas. 1914A, 258, 41 L. R. A. (N. S.) 1022, 127 Pac. 44].) At the trial from which the present appeals arise it is made to appear from

the testimony of both the defendant and the witness, Lund, a building contractor, who put in the plate-glass front and the marble slabs for the defendant, that the plate glass and the marble slabs removed from the building did not constitute the entire front of the store, nor their removal cause the building itself to cease to be an inclosure. The manner in which the plate glass and the marble base were installed was described by Lund as follows: "The plate glass set at the outer edge of the shoulder of the base; a little recess, about five-sixteenths of an inch, was left outside of the hardwood floor for this glass to set in. We always leave a little space at the top of half an inch, so in case of any settlement there is no danger of breaking the glass. The glass at the corner was held in place by a wooden bar on the inside, which was fastened neither to the ceiling nor to the base of the window, and metal bars on the outside were screwed into this wooden bar to form a clamp to secure them. The base of the glass was held in place by the marble, which projected above the base of the glass, say one-half or three-quarters of an inch and the marble in turn was secured by brass screws, through the marble, into the wooden base of the window. . . . The plate glass that I put in for Mr. Mayfield did not in any way tend to support or strengthen or hold together the window; nor did the marble slabs." This witness further testified that the molding was nailed to the building and cleats attached to the molding, and that the glass was slipped into and held by the cleats; that, in removing the glass, neither the molding nor the cleats were touched or disturbed, but the glass was merely withdrawn from the cleats.

The plaintiff testified that, when the plate glass and marble slabs were removed, the building was not thereby left open or exposed to the elements; that the whole front remained, and that "there were partitions, the windows still remained there, and the only way anyone could enter would be entering through the door." In this statement the plaintiff was corroborated by Lund.

In brief, and recapitulatory of the testimony of the plaintiff and Lund, the marble was used as a base for the support of the plate glass, and the latter was itself nowhere attached to the building, but was slipped into the cleats which had been fastened to the molding, so that it could be and was, as we have seen and shall later further see, removed from the cleats

33 Cal. App.—44

without detaching the cleats or the molding or otherwise disturbing either or the building; that the plate glass and the marble did not form the front portion of the structure, and that when removed it did not destroy the inclosure of the building or otherwise expose it to the elements or intruders, the plaintiff testifying that entrance into the store, after the removal, could be effected only by means of the door. This, we say, is the testimony as it is presented by the record now before us relative to the manner in which the plate glass and the marble base were attached to the building; and, while it is true that the marble was secured by means of brass screws which were passed through it and into the wooden base of the window, yet the testimony adverted to very clearly shows that the show-window was so constructed as to admit of the ready and easy removal thereof without the slightest injury to the building, or the impairment of its stability as a structure in any degree.

As to the agreement for the removal of the plate glass and the marble, the testimony shows: That the plaintiff's son, Richard C. Haile (deceased at the time of the second trial), had the management and control of the building as the plaintiff's agent. He, in other words, was authorized by the plaintiff to attend to the renting of it, to make agreements and leases to that end, and to make such arrangements with tenants or persons employing the use of the building as might be necessary or required for the convenient use of the building for the purposes for which it might be let out. When the defendant leased the building the negotiations for that purpose were carried on with Haile. The defendant testified that he spoke to the plaintiff about making some changes and improvements in the store, and that she referred him to Haile, saying her son "had charge of it and whatever I did to do with him." The defendant then called on Haile, and the two entered into an agreement by which a number of improvements in the interior of the store were to be made, the defendant to pay for the same, and to withhold from the rent in reimbursement for the expenditure so made the sum of ten dollars each month until the total sum so expended—amounting in the aggregate to $175—was repaid. Subsequently, the defendant again went to Haile and asked him to install the heavy plate glass and the marble base in the place of the front show-window as it then stood. Haile refused to pay for the improvement so

asked for, but proposed that the defendant proceed to put in the plate-glass windows and marble, and that the latter, when he vacated the store, "could take them out and remove them, provided I would replace them as the store originally was prior to the time when I took it out or in as good condition."

The court found that the removal of the plate glass and marble was by the defendant, on the twenty-eighth day of May, 1910, "effected and made without any damage whatsoever to said premises or said freehold or said building; that neither said glass nor said marble had by the manner in which they or either of them was affixed, or otherwise, become an integral part of the premises or freehold or building nor were said glass and marble an integral part thereof; that said glass and marble were affixed to said building by means of lag screws."

Testimony showing how the glass and marble were attached to the building has already been referred to herein, and, as further supporting the above finding, testimony disclosing the following additional facts should be considered: That there were only four slabs of marble and as many pieces of plate glass removed, leaving the remainder of the front intact; that neither the plate glass nor marble was used for or acted as a support for the store above or any part of the building; that, as a matter of fact, "the plates would surely break if there was any weight on them"; that it required only thirty or forty minutes to remove them, and that immediately upon their removal they were replaced with plain glass and a wooden base even superior in quality to those in the front of the building before the plate glass and the marble were substituted therefor; that, in removing them, it was only necessary to slip the plate from the cleats by which they were held and to remove the screws securing the marble base; that, by their removal, the brick or other materials of which the building was constructed were not disturbed or damaged in any degree, and that the building itself remained as stable and strong as it ever was.

The testimony addressed to the vital issues involved in the controversy, as they were formally tendered and accepted at the later trial thereof, has now been briefly summarized, and from the testimony as so presented it is plainly manifest that as the case was presented at the second trial thereof, and as it

is here now presented, the defendant, both in the matter of pleading and in that of proof, relied and relies upon the provisions of section 1013 and not, as the situation necessitated upon the former trial, upon those of section 1019 of the Civil Code. The first-mentioned section, it should be explained, in effect provides that, where an agreement is so made between the landlord and tenant, the latter may remove property or a thing affixed by him to the land of the former. The section next named provides that, at any time during the continuance of his term, a tenant may remove from the demised premises anything affixed thereto by him for the purposes of trade, manufacture, ornament, or domestic use, if the removal can be effected without injury to the premises, unless the thing has, by the manner in which it is affixed, become an integral part thereof.

And it seems to us that, from the testimony, of which the above is a conspectus, the conclusion is irresistible that, upon the theory upon which the cause was last presented and tried, there is, as before in effect declared, ample justification for the trial court's deductions therefrom, as evidenced by its findings, viz.: That the plate glass and the marble slabs removed by the defendant were attached to the building at his own expense and that they were his property; 2. That they were not so affixed to the premises as to constitute them integral parts thereof, but were attached thereto in such manner "as to justify his removal of them"—that is to say, in such manner as that they could be removed without injury or damage to the freehold or the building to which they were directly attached; 3. That they were removed without producing any injury or damage to the freehold or the building; and, 4. That the building upon such removal was put by the defendant in as good, if not a better, condition in that respect than it was in prior to and at the time of the installation of the plate glass and the marble front or show-window.

It results, of course, that the findings, being sufficiently sustained by the proofs, afford full support to the judgment.

The claim that the court should have granted the preliminary or other preventive relief asked for by the plaintiff is of little importance, even if, under the allegations of the complaint, the plaintiff was preliminarily entitled to such ancillary aid. The complaint, in furtherance of its plea for an injunction, alleged that the defendant had threatened and was

about to remove from the store certain fixtures which belonged to the plaintiff. The court found, upon sufficient evidence, that certain fixtures, portable in character, such as hatracks, showcases, and other like store appliances, which were not affixed to the building in a legal sense, were the property of the plaintiff. If the object of the injunction was to restrain the defendant from removing these, the failure to grant that remedy is, so far as such fixtures were concerned, now unimportant and without prejudice, since, as shown, it was found that they belong to the defendant. As to the other fixtures, apart from the plate glass and marble slabs, the court found, as will be noticed from the findings above quoted herein, that the parties had stipulated that they were the property of the plaintiff. This finding is supported by evidence, and, obviously, favorable to the plaintiff. The evidence shows that these particular fixtures were never interfered with or disturbed by the defendant, nor was there any attempt on his part to remove them. Therefore, so far as said fixtures were concerned, whether the court did or did not err in refusing to grant a preliminary injunction, is now entirely without any significance or importance; and, under the finding and the stipulation referred to, it was obviously unnecessary to grant permanent injunctive relief as to said fixtures.

Of course, it will not be claimed that the prayer for an injunction was aimed at interference with or the removal of the plate glass and marble slabs, since the evidence shows, and, indeed, the complaint alleges, that those articles had already been removed when this action was instituted, and since, as clearly appears from the complaint, the injunctive relief asked for was solely and exclusively prohibitive, and not mandatory in its nature.

We do not think, as the plaintiff contends, that the court abused its discretion in allowing the defendant to amend his answer in the particular and manner indicated in the outset of this opinion. It is evident that, from the very inception of this action, particularly from the time of the filing of the answer, the theory of the defendant was that, having himself and at his own expense put in the plate glass and the marble slabs, they constituted his property, and that he would legally be entitled and authorized to remove them upon the termination of his term as lessee of the premises. But it transpired,

as we have shown, that this theory was not presented by the answer as originally filed, nor did the court at the first trial make a finding in consonance therewith, and thus the defendant lost on appeal. In view of the situation as thus indicated, and in the interest of justice, the order granting leave to the defendant so to amend his pleading as to enable him legally to make out his case on the proofs conformably to the only theory upon which he could hope to prevail—the theory upon which he had evidently supposed he had properly proceeded in the first instance—constituted only the exercise of a sound judicial discretion.

We have examined in detail and with much care the rulings by which, so it is claimed, improper testimony was permitted to enter the record, and have found in none of them any just ground for holding that, even if technically erroneous, they, in any measure, affected the substantial rights of the plaintiff at the trial of the case.

The judgment and the order appealed from are affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 13, 1917.